UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **FRED HOSEY** | ) | **Case No. 05-11977-TOM-7** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **TERRY HOSEY** | ) | |
| | ) | **A.P. No. 06-00025-TOM** |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **FRED HOSEY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court following a trial on September 27, 2006, on the Amended Complaint to Determine Dischargeability filed by the Plaintiff, Terry Hosey. Appearing at the trial were: Jason Stoves, attorney for the Plaintiff; Rob Barber for Joshua Watkins, attorney for the Debtor, Fred Hosey; the Plaintiff; and Elmore "Buddy" Moore, witness for Plaintiff. The Court has jurisdiction pursuant to 28 U.S.C. §§151, 157(a) and 1334(b) and the United States District Court for the Northern District of Alabama's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1]

---

[1] 28 U.S.C. § 151 provides:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).[2] The Court must determine whether the debt owed to the Plaintiff is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4). The Court has considered the pleadings, the arguments of counsel, the testimony, the evidence admitted and the law and finds and concludes as follows.[3]

## I. FINDINGS OF FACT[4]

---

district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

28 U.S.C. § 157(a) provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 1334(b) provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The General Order of Reference as amended provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. § 157(b)(2)(I) provides:
   (b)(2)Core proceedings include, but are not limited to–
      (I) determinations as to the dischargeability of particular debts;

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. Unit B July

2

**A. Procedural History**

According to Plaintiff's Amended Complaint, on or about June 10, 1997, Terry Hosey (hereinafter "Plaintiff") filed suit against Fred Hosey (hereinafter "Defendant" or "Debtor") in the Circuit Court of Jefferson County, Alabama. (Proceeding No. 10)  Allegedly, the state court complaint contained an allegation against Debtor for fraudulent misrepresentation. Id.  No copy of this complaint has been shown to this Court or offered into evidence.  On June 10, 2002, a jury verdict in favor of Plaintiff and against Defendant in the total amount of $143,052.60 was entered by the Jefferson County Clerk. Plaintiff's Exhibit 6.  The jury verdict (Plaintiff's Exhibit 6) and the case action summary page reflecting entry of the jury verdict (Plaintiff's Exhibit 7) are the only documents offered or admitted from the Jefferson County state court action.  Plaintiff did not offer copies of the jury instructions, special interrogatories or any other documents.  Debtor filed a voluntary Chapter 7 case in the United States Bankruptcy Court for the Northern District of Alabama on October 14, 2005.  This adversary proceeding was commenced by Plaintiff on January 12, 2006 to determine the dischargeability of the state court judgment against Debtor.

**B. Facts Regarding Dischargeability**

Plaintiff testified that in July or August of 1996, while employed in the roofing business, his cousin, Debtor, contacted him concerning a remodeling job (hereinafter the "Project") for Amberwood Apartments (hereinafter the "Apartments"), located in Jefferson County, Alabama. Plaintiff alleges that Debtor verbally assured him that it would be a joint venture between the two of them under the name Hosey Enterprises, with profits to be split 50/50. (Proceeding No. 10) Plaintiff further alleges that Debtor promised to open a separate bank account to track their

---

1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

3

company's profits and expenses. Id. This separate account would be managed by Kathy Hosey, Debtor's wife. Id. Plaintiff testified he did not have a general contractor's license, but that he worked under Debtor's license and that Debtor provided workers' compensation for the employees on the Project.

In September of 1996, a written contract for the Project was entered into between Elbert "Buddy" Moore on behalf of Eastern Villa Associates, who owned the Apartments, and Fred Hosey, d/b/a/ H&C Contracting. See Plaintiff's Exhibit 1. Plaintiff's attorney showed two contracts to Mr. Moore while he was on the witness stand. Mr. Moore testified that his signature is on Plaintiff's Exhibit 1, which reflects a contract for Debtor to do roofing work on eleven buildings for $15,000.00 per building for a total of $165,000.00. This document was signed by Debtor and Mr. Moore on September 24, 1996 before a notary public. At the top of this document is handwritten "Fred Hosey D/B/A" before H&C Contracting. Handwritten under Amberwood Apartments is "AKA Eastern Villa Associates, Ltd." Also added on the last page was an additional payment requirement, "after the inspection and approval of owner." Each of these three "penciled in" changes to the face of the contract appear to have been initialed by the contracting parties. Plaintiff's attorney failed to illicit any testimony from either of his witnesses about these changes or the identity of the initials that appear adjacent to each of these additions.

While Mr. Moore was on the witness stand, Plaintiff's attorney showed him another very similar contract, Plaintiff's Exhibit 2. Mr. Moore testified that he did not sign that agreement. This contract contains none of the handwritten terms found in Plaintiff's Exhibit 1, shows the price per building as $9,090.00 for a total of nearly $100,000.00 for the eleven buildings, and is not notarized. The document appears to have been signed by a representative of the Apartments and H&C

4

Case 05-11977-TOM7    Doc 20    Filed 11/14/06    Entered 11/14/06 14:45:23    Desc Main
Document      Page 4 of 19

Contracting on September 17, 1996, seven days before Plaintiff's Exhibit 1 was executed. Plaintiff testified that Debtor showed him Plaintiff's Exhibit 2 as the contract they were working under.

Plaintiff also testified that he drew up Plaintiff's Exhibit 4, which purports to set out the terms of the agreement between Plaintiff and Debtor (hereinafter, the "Agreement"). According to this document, the Agreement is effective October 1, 1996, not in July or August as Plaintiff originally testified. The first paragraph of Plaintiff's Exhibit 4 references a contract entered between Debtor and the Apartments, references the total price for eleven buildings from Plaintiff's Exhibit 2 ("$100,000.00") and references the party names from Plaintiff's Exhibit 1 ("Fred Hosey and/or Fred Hosey DBA H&C Contracting"). The second paragraph provides that all outstanding bills will be paid before either Plaintiff or Debtor are paid. Additionally, the contract provided for the additional term whereby Plaintiff was to receive $120.00 a day for his work along with his fifty percent share of any profits. Plaintiff's Exhibit 4 also reflects that the parties agreed that upon completion of the contract, Plaintiff, as job foreman, would be paid the balance due him "as money is available upon completion." Only then, according to Plaintiff's Exhibit 4, would the net profits be split "fifty-fifty" between the parties.

While working on the Project, Mr. Moore testified that he never knew Debtor had a business partner, but admitted that Plaintiff went on the building inspections with him before the Apartments would pay for the work. According to Plaintiff's Exhibit 3 and Mr. Moore's testimony, the Apartments received two invoices for work done as it became due and payable: one for payment to Debtor and another for payment to H&C Contracting. The total amount invoiced for the project totaled $286,305.38. <u>See</u> Plaintiff's Ex. 3. Mr. Moore also testified that Plaintiff abandoned the Project when, he estimated, it was nearly three-quarters finished, due to a disagreement with Debtor.

5

On April 2, 1997, Plaintiff and Debtor entered another agreement (hereinafter, the "Lease Agreement") providing for the reimbursement to Plaintiff for use of his own equipment. See Plaintiff's Ex. 5. Plaintiff testified that some of the equipment was stolen and the insurance company paid $2,715.72 which, according to the agreement, was to be paid to Debtor. Plaintiff has not received this money and is claiming it as part of his damages. He further claims business expenses he personally paid totaling $16,200.00 and has yet to be reimbursed as promised by Debtor. He also is claiming $15,000.00 for the four months he worked on the job and was supposed to receive $120.00 a day. He also claims his portion of the profits, after expenses, is $102,231.43. The only payment Plaintiff alleges to have received was from Kathy Hosey for $13,000.00.

The state court jury verdict awarded damages to Plaintiff as follows: $121,232.60 for compensatory damages and $21,820.09 for punitive damages, for a total of $143,052.69. See Plaintiff's Ex. 6. Plaintiff has added 12 percent interest to this amount, and compounded annually, as of the hearing date, the amount Plaintiff requests this Court to declare nondischargeable under 11 U.S.C. §§ 523(a)(2) and 523(a)(4) is $225,096.03.

## II. CONCLUSIONS OF LAW

**B.** **Dischargeability of the Debt**

Section 523 of the Bankruptcy Code outlines exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. See Hope v. Walker (In re Walker), 48 F.3d 1161 (11th Cir. 1995); Equitable Bank v. Miller (In re Miller), 39 F.3d 301 (11th Cir. 1994). A creditor seeking to except a debt from discharge bears the burden of proof as to each particular element of nondischargeability by a preponderance of the evidence. Grogan v. Garner,

6

498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). The Plaintiff alleges that these debts are nondischargeable pursuant to §§ 523(a)(2) and 523(a)(4) of the Bankruptcy Code.

*1. Section 523(a)(2)*

Section 523(a)(2)(A)[5] of the Bankruptcy Code provides that a debt for money, property, services, or an extension, renewal, or refinancing of credit will not be discharged to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The elements that the Plaintiff must establish for a determination of nondischargeability under this section include: 1) the debtor received or obtained money or property from the plaintiff, which creates a debt or obligation to the plaintiff; 2) the money or property was obtained and the debt incurred by either false pretenses, a false representation, or actual fraud; 3) the false pretense, false representation, or actual fraud was either done by the debtor knowingly or in reckless disregard of the truth; 4) the debtor's conduct was with the intention to deceive, with the intention that the plaintiff detrimentally rely, or with the intention that the plaintiff be given a false impression; 5) the plaintiff justifiably relied on the debtor's conduct or misrepresentation; and 6) the plaintiff suffered damages as a result of the

---

[5] 11 U.S.C. § 523 provides in part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
. . . .
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
        . . . .

7

Case 05-11977-TOM7   Doc 20   Filed 11/14/06   Entered 11/14/06 14:45:23   Desc Main
Document    Page 7 of 19

debtor's actions.[6]

The first element requires a finding that the Debtor received money or property, thereby creating an obligation to the Plaintiff. From the testimony and evidence, it is apparent that Plaintiff performed some services for Debtor on the Project and expected to be compensated according to their Agreement. For instance, the Agreement acknowledges that he was acting as a job foreman for the Project, thus entitling him to $120.00 a day for his work in this capacity for Debtor. Mr. Moore testified that Plaintiff did work and provided labor for the Project. Plaintiff would also go on the building inspections with Mr. Moore prior to the Apartments paying for the work. Thus, Plaintiff provided some services to Debtor, and Debtor had an obligation to pay Plaintiff.

The second element concerns the manner in which a debtor acquired the money or property. Because "false pretenses," "false representation" and "actual fraud" are placed in the disjunctive, Congress intended that any one of these is sufficient to establish nondischargeability under § 523(a)(2)(A). The Court will address all three as the Plaintiff alleged them all in his Amended Complaint. (Proceeding No. 10)

   a. *False Pretenses*

False pretenses are "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor." Sterna v. Paneras (In re Paneras), 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996). Judge Benjamin Cohen has defined false pretenses as follows:

---

[6] See 11 U.S.C. § 523(a)(2)(A); SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).

> The concept of "false pretenses" is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses "may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol or token calculated and intended to deceive."

FCC Nat'l Bank v. Gilmore (In re Gilmore), 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998)(quoting BLACK'S LAW DICTIONARY 602 (6th ed. 1990)).

In this case, Plaintiff has attempted to prove that Debtor deceitfully procured his services. Specifically, it appears that Plaintiff has tried to recreate his state court fraud case in part and rely on the inconclusive state court verdict and judgment in part. It further appears to this Court that the Plaintiff has only proved the existence or validity of one contract (hereinafter, the "Contract"), Plaintiff's Exhibit 1. Plaintiff's Exhibit 2 pre-dates Plaintiff's Exhibit 1 and no one testified in this Court to establish its validity; Plaintiff's own witness, Mr. Moore, testified that he only agreed to and signed Plaintiff's Exhibit 1 on behalf of the Apartments. There was no testimony or evidence presented to this Court that the other alleged contract, Plaintiff's Exhibit 2, was utilized, relied upon or valid.

Plaintiff testified that he drafted the Agreement with Debtor with the impression that the Project was for $100,000.00 and that Plaintiff was supposed to receive an additional $120.00 a day for his work in addition to his split. Plaintiff also testified he and Debtor entered a "verbal agreement" in July or August of 1996, but the Agreement he drafted references an effective date of October. Although Plaintiff testified that the only contract for the Project he knew about was Exhibit 2, Plaintiff incorporated into the first paragraph of the Agreement terms from both Exhibit 1 and Exhibit 2: from Plaintiff's Exhibit 2 is the price of the Project, $100,000.00; from Plaintiff's Exhibit 1 is the name of the parties to the Contract. No explanation for this inconsistency was

9

provided to this Court. No testimony was offered as to why Plaintiff thought Debtor should have changed the joint venture's name to Hosey Enterprises and open a separate account, when after any discussions about this, in the Agreement drafted by Plaintiff there are references to "Fred Hosey and/or Fred Hosey DBA H&C Contracting" (as it's written in Plaintiff's Exhibit 1, the one Plaintiff said he did not know about at that time) and nowhere does this Agreement refer to a bank account. The Agreement also provides that bills were to be paid before Plaintiff or Debtor. Plaintiff testified that Debtor did initially pay the bills that became due, but then stopped, leaving Plaintiff responsible, because the accounts due were primarily in his name. Debtor's payment of these bills at the outset demonstrates a lack of intention to defraud Plaintiff or to mislead Plaintiff.

Plaintiff made a point to emphasize that there are two invoices to the Apartment per building, one from Fred Hosey and another from H&C Contracting. It appears that Plaintiff would like this Court to imply from the invoices billed to the Apartments in Plaintiff's Exhibit 3 that Debtor mislead Plaintiff or was hiding something. Plaintiff apparently knew, at least from the time of the Agreement and possibly from the time of the Contract for the Project, that both Fred Hosey and/or H&C Contracting were referenced in each contract. Thus, the double invoices does not on its own demonstrate misconduct, wrongful omissions by Defendant or deceit, without any further explanation from Plaintiff.

Plaintiff and Debtor also entered a Lease Agreement. See Plaintiff's Exhibit 5. Although Plaintiff testified that he has not been paid pursuant to its terms, there is nothing before this Court to indicate that at the time of entering the Lease Agreement, Debtor intended to wrongfully induce Plaintiff to agree to its terms. Furthermore, Plaintiff's own witness, Mr. Moore, testified during cross-examination that Plaintiff left the job site following a dispute with Debtor, leaving the Project

10

only three-quarters complete. Plaintiff neither explained these events or contradicted that statement, but did testify that he received $13,000.00 for his work from Debtor's wife. Additionally, Mr. Moore testified that he never knew Debtor had a business partner, but that Plaintiff worked on the Project.

Construing this exception to discharge strictly against the Plaintiff, the Court finds that Plaintiff has not, by a preponderance of the evidence, sufficiently proven to this Court that Debtor intended to mislead Plaintiff by false pretenses at the time of engaging Plaintiff's services for the Project. Nothing suggests that at the time of entering the Agreement with Plaintiff, Debtor possessed the intent to defraud or misrepresent to Plaintiff what was brought to the bargaining table.

Based on the foregoing, Plaintiff failed to prove the second element on the basis of false pretenses.

### b. *False Representation*

The line between false pretenses and false representations is not always clear, but the two can be differentiated. Carlan v. Dover (In re Dover), 185 B.R. 85, 88 n3 (Bankr. N.D. Ga. 1995). While a false pretense generally pertains to implied misrepresentations or conduct creating a false impression, "false representation involves an expressed misrepresentation by a debtor." Castro v. Zeller (In re Zeller), 242 B.R. 84, 87 (Bankr. S.D. Fla.1999). As previously discussed, Plaintiff has tried to convince this Court that he did not know about the second contract between Debtor and the Apartments for more money (Plaintiff's Exhibit 1), the two invoices per building and other incorrect information from Debtor. However, these factors are all inconsistent with the Agreement which is in evidence and also contradict Plaintiff's own testimony. Because there is no credible evidence or testimony before this Court of any statements, either verbal or written, that would constitute an

11

express misrepresentation on the Debtor's part, the second element cannot be met on the basis of false representation.

### c. *Actual Fraud*

The Eleventh Circuit has determined the elements of actual fraud to be that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). See also Field v. Mans, 516 U.S. 59, 73-75, 116 S.Ct. 437, 445-446 (1995) (holding that section 523(a)(2)(A) requires justifiable, but not reasonable, reliance). As explained above, there is no evidence that the Debtor made any false representations, either verbal or written, to Plaintiff.

Although Plaintiff argues that he performed his duties under both the Agreement and the Lease Agreement (Plaintiff's Exhibits 4 and 5), there is no evidence before this Court for it to conclude that the Debtor possessed an intent to defraud Plaintiff at the time of entering the Contract for the Project, the Agreement or the Lease Agreement. Furthermore, it appears that Plaintiff would have this Court assume actual fraud based on an inconclusive verdict from an Alabama state court jury awarding punitive damages. The verdict and order submitted to this court as Plaintiff's Exhibits 6 and 7 only refer to the compensatory and punitive damages awarded, and nowhere mention fraud.[7] Because discharge complaints are to be narrowly construed with the burden of proof on the Plaintiff, the Court should refrain from assumptions or inferences that could have been established or proven

---

[7] The Court is aware of the recent opinion of a Bankruptcy Court in this district which reasoned that if a jury verdict indicated punitive damages, a court may infer "that its verdict was based on the plaintiff's fraud count" based on Alabama law. In re Bennitt, A.P. No. 05-00164, 2006 WL 2474852, at *6 (Bankr. N.D.Ala. August 28, 2006). This Court declines to accept this view and infer fraud from a punitive damage award.

12

by the Plaintiff. Plaintiff could have but failed to provide this Court with any pleadings or documents from the state court that could have established proof of fraud to that jury. Had the Court been able to review the state court complaint or at least the jury instructions or special interrogatories, perhaps then this verdict might have been given more weight in determining fraud for purposes of this dischargeability proceeding.[8] However, this was not the case. The Plaintiff has not proven by a preponderance of the evidence that the debt was incurred through false pretenses, false representations or actual fraud and has therefore not fulfilled the second element required to prove nondischargeability under § 523(a)(2)(A).

Because the Plaintiff has not proven the second element necessary for a determination of nondischargeability under § 523(a)(2)(A), there is no need to discuss the remaining elements. This Court concludes that the Plaintiff has not met his burden and is not entitled to a determination that any debt to owed to him by the Debtor is nondischargeable pursuant to § 523(a)(2)(A).

*2. Section 523(a)(2)(B) and (C)*

Section 523(a)(2)(B) concerns a materially false written statement concerning a debtor's financial condition and § 523(a)(2)(C) concerns "luxury goods or services." Because Plaintiff referenced § 523(a) but provided no evidence or testimony under § 523(a)(2)(B) or (C), the Court concludes that the debt is not nondischargeable under these subsections.

*3. Section 523(a)(4)*

The Plaintiff also contends that the debt is nondischargeable under § 523(a)(4) of the

---

[8]Plaintiff's attorney, in reliance on the state court verdict, appears to be indirectly asserting collateral estoppel with regard to application of the verdict to the facts of this case. Because this Court has nothing from the state court to draw any sort of conclusion, other than a verdict with no reference to fraud or any count against Debtor, it refuses to find that the state court verdict conclusively establishes fraud.

13

Bankruptcy Code. Section 523(a)(4) provides that an individual debtor is not discharged for debts resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This section is divided into two disjunctive sections. The first deals with fraud or defalcation while acting in a fiduciary capacity. The second deals with embezzlement or larceny even when not acting in a fiduciary capacity. Each will be discussed in turn.

### a. *Fraud or defalcation while acting in a fiduciary capacity*

For a debt to be to be determined nondischargeable under the first half of § 523(a)(4), two elements must be proven: 1) a fiduciary relationship existed and 2) the debtor committed fraud or defalcation while acting in his capacity as a fiduciary. 11 U.S.C. § 523(a)(4). While the existence of a fiduciary relationship under § 523(a)(4) is determined by federal law, state law is relevant to the inquiry. See, e.g., Brothers v. Young (In re Young), 91 F.3d 1367, 1371-72 (10th Cir. 1996). Federal law narrowly defines the concept of "fiduciary relationship" to include only relationships involving an express or technical trust. Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993). Implied, resulting and constructive trusts do not fall within the confines of this section. Id. If state law imposes the duties of a trustee on a party, the party is a "fiduciary" for the purposes of § 523(a)(4). Id. at 954. The fact that a relationship is characterized as fiduciary under state law does not necessarily mean that it is a fiduciary relationship within the meaning of § 523(a)(4). The traditional meaning of fiduciary under state law — loyalty, good faith and fair dealing — is too broad for the purposes of this section. Only a subset of fiduciary obligations is encompassed in the word "fiduciary" for purposes of § 523(a)(4).

In order to qualify under § 523(a)(4) there must be an express or technical trust imposing trustee-like obligations upon Debtor. There is no express trust in this case and the Plaintiff has not

14

provided any Alabama state statute or case law indicating a technical trust imposing specific trustee-like obligations upon members of a joint venture. Rather, Plaintiff's attorney would have this Court assume and piece together from the scant evidence presented at trial and argued in closing arguments that a joint venture or partnership existed and that § 523(a)(4) fiduciary duties were imposed upon Debtor. This Court refrains from doing so.

Plaintiff bore the burden of proving the joint venture's existence. Flowers v. Pope, 2006 WL 438868 (Ala. February 24, 2006)(no page reference available). Whether or not a joint venture exists in disputes between parties is derived from the parties' intent. Id. The Alabama Supreme Court in Flowers noted that joint ventures "are an association of persons with intent....to...carry out a single business venture for joint profit....without creating a partnership." Id. (citing 46 Am. Jur. 2d *Joint Ventures* § 1 (1969)). Other Alabama case law indicates joint ventures are closely akin to partnerships. See McDuffie v. Hooper, 294 So.2d 573 (Ala. 1974). Under Alabama partnership law, a partnership may result from a joint venture, but only if it meets the definition of partnership. See Ala. Code § 10-8A-202. According to Alabama's definition, a partnership may be found if there is a sharing of the profits, but there is no partnership when an independent contractor is paid for services rendered. Id.[9]

---

[9]Ala. Code § 10-8A-202 state in part
........
   (c) In determining whether a partnership is formed, the following rules apply:
   ........
      (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:
      ........
         (iii) for services as an independent contractor or of wages or other compensation to an employee;

15

Plaintiff alleges that he and Debtor entered into a joint venture. The Amended Complaint alleges that Debtor "had a fiduciary duty to open the bank accounts on behalf of the joint venture, and to administer them in the manner which was promised." (Proceeding No. 10) Plaintiff may have intended to create a joint venture, but given the inconsistencies in Plaintiff's testimony, and the resulting lack of credibility of Plaintiff, the Court cannot conclude that a joint venture was formed. However, even if the Court found under Alabama law that a joint venture existed, Plaintiff did not establish for this Court that a partnership existed under Alabama law. A joint venture does not mean there is a partnership. See Flowers v. Pope. Although the Agreement indicates that the profits were to be split, Plaintiff testified that Debtor was responsible for the employees on the job and provided them workers' compensation. Plaintiff knows the roofing business, but testified that he did not have a general contractor's license. Although Plaintiff insisted he was a general contractor under Debtor's license, that does not appear to be appropriate under Alabama law[10]. See B.D. Stephenson Trucking, L.L.C. v. Riverbrooke Capital Partners, L.L.C., No. CIV.A.06-0343-WS-M, 2006 WL 2772673, at *2 (S.D. Ala. Sept. 25, 2006). The Agreement further indicates that Plaintiff was to be paid additionally for his services as job foreman. References to a partnership in closing arguments are not evidence. These factors lead this Court to find that a partnership did not exist between the parties. Rather, it appears that the profits were to be split and Plaintiff was to be additionally paid for the services he provided to Debtor as an independent contractor or employee. Although the Court does not think a joint venture was sufficiently proven, the Court will determine whether Alabama law imposes a technical trust upon the Debtor in the alleged relationship as joint venturers.

Because Alabama case law does indicate that the duties of loyalty and care between members

---

[10] See Ala. Code § 34-8-1 (1975).

16

of a joint venture are closely akin to partners, the Court looks to Alabama's relatively new partnership law. See McDuffie v. Hooper. This Court has previously discussed in In re Resha,[11] Alabama Code § 10-8A-404 which delineates fiduciary duties between partners. Without referencing joint ventures, the Comment to § 10-8A-404 indicates that partners' fiduciary duties fall under the broad category of principle and agent. Flowers v. Pope also suggests that members of a joint venture are both principles and agents to one another. Id.[12] This indirect correlation to the reference of agency law in Flowers v. Pope and the Alabama Code is insufficient for the Eleventh Circuit's definition of fiduciary, which is to be construed *very narrowly* under § 523(a)(4). The Eleventh Circuit concluded that "[t]he Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." In re Fernandez-Rocha, 451 F.3d 813, 815 (11th Cir. 2006)(citing Quaif v. Johnson, 4 F.3d at 953). Therefore, the Court finds that no fiduciary duties were placed upon Debtor within the alleged joint venture for the purposes of § 523(a)(4), and having found there to be no fiduciary capacity, discussion of defalcation or fraud is unnecessary.

### b. *Embezzlement and larceny*

Section 523(a)(4) also excepts from discharge those debts resulting from embezzlement or larceny. A leading treatise on bankruptcy explains that in § 523(a)(4), the phrase "while acting in a fiduciary capacity" does not qualify the words "embezzlement" or "larceny." See 4 Collier on Bankruptcy ¶ 523.10[2] at 523-76 (Alan N. Resnick, et al., eds., 15th ed. rev. 2004). Therefore, any debt resulting from embezzlement or larceny, even where the debtor was not acting in a fiduciary

---

[11]In re Resha, A.P. No. 01-00062, slip op. at 11 (Bankr. N.D. Ala. June 7, 2002.)

[12]Citing 46 Am. Jur. 2d *Joint Ventures* § 1 (1969).

17

capacity, falls within the exception to discharge under this clause.

For purposes of § 523(a)(4), embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Richard v. Dougherty (In re Dougherty), 179 B.R. 316, 320 (Bankr. M.D. Fla. 1995). Similarly, for the purposes of § 523(a)(4) larceny is defined as "a felonious taking of another's personal property with intent to convert it or deprive the owner of the same." Weinreich v. Langworthy (In re Langworthy), 121 B.R. 903, 907-08 (Bankr. M.D. Fla. 1990)(quoting BLACK'S LAW DICTIONARY 602 (6th ed. 1990)).

Both embezzlement and larceny require fraudulent intent or deceit by the Debtor. See Bennett v. Wright (In re Wright), 282 B.R. 510 (Bankr. M.D. Ga. 2002). The Plaintiff did not demonstrate by a preponderance of the evidence that the Debtor had any fraudulent intent or that he intended to deceive Plaintiff.[13] Therefore, the Debtor cannot be denied a discharge of this debt for embezzlement or larceny under § 523(a)(4).

### III. CONCLUSION

The Court finds that the Plaintiff has failed to prove by a preponderance of the evidence that any debt owed to him by Debtor should be declared nondischargeable under §§ 523(a)(2) or 523(a)(4). Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the relief sought by the Plaintiff, Terry Hosey, to declare certain indebtedness of the Debtor, Fred Hosey, nondischargeable in accordance with 11 U.S.C. §§ 523(a)(2) and 523(a)(4) is **DENIED**. It is further

---

[13] See previous discussion on pages 9-13 regarding the absence of proof on these allegations.

18

**ORDERED, ADJUDGED AND DECREED** that the indebtedness of the Debtor, Fred Hosey, to the Plaintiff, Terry Hosey, is **DISCHARGEABLE** and shall be included in the discharge of the Debtor that was entered in this case by order of this Court.

Dated this the 14th day of November, 2006.

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
UNITED STATES BANKRUPTCY JUDGE

TOM: ejb
xc:  Fred Hosey, Debtor
     Rob Barber, Attorney for Debtor
     Terry Hosey, Plaintiff
     Jason Stoves, Attorney for Plaintiff